## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILDA L. ARCE, o/b/o L.A.,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | **No. 19-5017** |

### MEMORANDUM OPINION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Hilda L. Arce, on behalf of her son, L.A., brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. §636(c), Fed. R. Civ. P. 72, and Local Rule 72.1, consent to the exercise of jurisdiction by a Magistrate Judge has been established.

Presently before this court are the plaintiff's request for review and the Commissioner's response. For the reasons set forth below, the plaintiff's request for review is DENIED.

I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born prematurely on October 11, 2011 and was found to be disabled as of the date of birth due to low birth weight. (Tr. 573, 179).

On October 25, 2013, when plaintiff was two years old, it was determined that plaintiff was no longer disabled because medical improvement occurred.  (Tr. 193-197).  That determination was upheld by a Disability Hearing Officer on January 23, 2015.  (Tr. 202-209).  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 216).

A hearing was scheduled for March 2, 2017, and the plaintiff affirmed that she would be present, but failed to appear.  (Tr. 252, 254).  A second hearing was scheduled for August 10, 2017 and plaintiff attended with L.A.  (Tr. 128-135).  The ALJ issued an unfavorable decision on September 7, 2017 (150-170).  Plaintiff filed a request for review, and the Appeals Council remanded the matter because the record did not contain a written waiver of L.A.'s right to representation and the hearing recording did not reveal a discussion of the right to representation.  (Tr. 173).

On April 9, 2019, ALJ Regina L. Warren held a hearing and heard testimony from the plaintiff, who was present with two legal clinic representatives.  (Tr. 72-114).  The ALJ issued an opinion on June 5, 2019, finding that L.A.'s disability ceased on October 23, 2013, and L.A. had not become disabled under the Act since that date.  (Tr. 12-37).  Plaintiff's mother filed a request for review, and on August 20, 2019, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).  Plaintiff's mother appealed that decision to this court.

II.    LEGAL STANDARDS

The Act requires that the Commissioner conduct a periodic review of a child's continued eligibility for SSI.  20 C.F.R. 416.994a.  There is no presumption of continuing

disability.  See Dowling o/b/o D.Y. v. Berryhill, 2018 WL 5342786, at *11 (E.D. Pa. Oct. 29, 2018).  The periodic review is governed by the three-step medical improvement review standard (MIRS).  Id.; 20 C.F.R. § 416.994a(a); SSR 05-03p.  At step one of the MIRS analysis, the ALJ will consider whether medical improvement has occurred since the time of the most recent favorable decision, known as the comparison point decision (CPD).  Dowling; 2018 WL 5342786 at *11; 20 C.F.R. § 416994a(b)(1).  "Medical improvement" is defined as "any decrease in the medical severity of the claimant's impairments."  SSR 05-03p.  If there has been no medical improvement, the child's disability continues; if medical improvement has occurred, the ALJ proceeds to step two.  Id.  At step two of the MIRS analysis, the ALJ must determine whether the child's impairments as established at the time of the CPD now meet or functionally equal the same listing that it met or functionally equaled at the time of the CPD.  Id.  If the child's CPD impairments do not still meet or functionally equal the severity of the listed impairments, the ALJ must proceed to step three.  Id.  At step three of the MIRS analysis, the ALJ must determine whether the child is currently disabled, considering all current impairments. Id.

   To establish a disability under the Act, an individual under the age of eighteen (18) must demonstrate he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner must follow a three-step sequential analysis for determining childhood disability.  20 C.F.R. § 416.924.  To establish disability the child must demonstrate: (i) he was not engaged in substantial gainful activity; (ii) he had a

"severe" impairment or combination of impairments; and (iii) his impairment or combination of impairments met, medically equaled, or functionally equaled the severity of an impairment in the listings. See id. If the child has an impairment or combination of impairments that causes marked and severe limitations of function that meet, medically equal, or functionally equal a listed impairment, the regulations direct a finding of disabled. 20 C.F.R. § 416.924(d).

An impairment functionally equals listing level severity if the child can show "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one that "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). Such a limitation is "more than moderate" but "less than extreme." Id. A limitation that is "extreme" is one that interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). The six domains of functioning in which the child must demonstrate marked or extreme limitation are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

In considering a child's claim for disability, the ALJ considers all relevant evidence including medical evidence, test scores, school records, and information from people who know the child and can provide evidence about functioning, such as the child's parents, caregivers, and teachers. See 20 C.F.R. § 416.924a. When evaluating the effects of the child's impairments on his functioning, the Commissioner considers how the child's functioning compares to the functioning of children of the same age without impairments, the combined

effects of multiple impairments, and how well the child can initiate, sustain, and complete activities.  20 C.F.R. § 416.924a(b).

Upon judicial review, this court's role is to determine whether an ALJ's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988).  "Substantial evidence is more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  It is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  In determining whether substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own conclusion for that of the ALJ.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  If the court determines the ALJ's factual findings are supported by substantial evidence, the court must accept the findings as conclusive.  Richardson, 402 U.S. at 390; Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence.  Richardson, 402 U.S. at 401.  While the Third Circuit Court of Appeals has made it clear that the ALJ must analyze all relevant evidence in the record and provide an explanation for disregarding evidence, this requirement does not mandate that the ALJ "use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, it is meant "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Id.  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

III.    ADMINISTRATIVE LAW JUDGE'S DECISION

Pursuant to the three-step sequential evaluation process, the ALJ determined the

plaintiff had not been under a "disability," as defined by the Act, since October 23, 2013.  (Tr.

12-37).  In her June 5, 2019, decision, the ALJ followed the above laid out three-step sequential

evaluation process set forth under 20 CFR 416.994a(b) and found the following:

1.  The most recent favorable decision finding that L.A. was disabled is the determination dated October 11, 2011. This is known as the "comparison point decision" or CPD.

2.  At the time of the CPD, L.A. had the following medically determinable impairment: low birth weight.  This impairment was found to meet section 100.04 of 20 C.F.R Part 404, Subpart P, Appendix 1.

3.  Medical improvement occurred as of October 23, 2013. (20 C.F.R. §§ 416.994a(c)).

4.  L.A. was born on October 11, 2011.  Therefore, he was a preschooler, as of October 23, 2013.  L.A. is currently a school-age child.  (20 C.F.R. § 416.926a(g)(2)).

5.  Since October 23, 2013, the impairments that L.A. had at the time of the CPD have not functionally equaled the Listings of Impairments (20 C.F.R. §§ 416.925 and 416.926).

6.  Since October 23, 2013, L.A.. has had the following severe impairment: attention deficit disorder (ADHD) (20 C.F.R. § 416.924(c)).

7.  Since October 23, 2013, L.A. has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.925, and 416.926).

8.  Since October 23, 2013, L.A. has not had an impairment or combination of impairments that functionally equals the listings. (20 C.F.R §§ 416.924(d) and 416.926(a)).

9.  L.A.'s disability ended as of October 23, 2013, and L.A. has not become disabled again since that date. (20 C.F.R. § 416.994(a)).

(Tr. 15-31).  Accordingly, the ALJ found that L.A. was no longer disabled and not entitled to SSI

benefits under the Act. (Tr. 31).

IV.     MEDICAL AND EDUCATIONAL RECORDS

Medical

L.A. was born on October 11, 2011 at 27 and 1/7 week gestation.  (Tr. 573).

Plaintiff weighed 2.216 pounds at birth.  (Tr. 573).

L.A. was seen at the Center for Children with Special Health Care Needs from

2011 to 2013.  (Tr. 619-645).  L.A. 's February 28, 2013 treatment notes indicate that he had a

history of apnea of prematurity, anemia, gastroesophageal reflux, retinopathy of prematurity, and

a history of respiratory distress syndrome, which resolved.  (Tr. 619).  The systems review

revealed normal results and it was noted that L.A. was doing very well and he was going to be

transitioned to a general primary pediatrician.  (Tr. 621).

When L.A. was 24 months old, Dr. Brian Torcato, M.D. completed a medical

source statement and indicated that L.A. had a short attention span and likes to hit and throw

things.  (Tr. 657-663).  L.A. was recommended to receive early intervention services.  (Tr. 660).

A Childhood Disability Evaluation Form was completed by Louis Tedesco, M.D.

on October 24, 2013.  (Tr. 669-674).  It was indicated that L.A.'s impairment was developmental

delay.  (Tr. 669).  Dr. Tedesco found L.A. had less than marked limitations in acquiring and

using information.  It was also found that L.A. had less than marked limitations in attending and

completing tasks, although he had a short attention span and was extremely uncooperative.

Noting that L.A. hits himself and others when angry, Dr. Tedesco found L.A. had less than

marked limitation in interacting and relating with others.  It was also found that L.A. had less

than marked limitations in health and physical well-being and moving about and manipulating objects.  Plaintiff had no limitation in caring for self.  (Tr. 669-674).

In January 2014 L.A. was seen at Tree of Life Behavioral Services and was diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder and conduct disorder.  (Tr. 675-676).

On February 26, 2014, Dr. Catherine Smith, M.D. completed a Childhood Disability Evaluation form and found L.A. had less than marked limitations in all categories but moving about and manipulation objects, which had no limitations.  (Tr. 680-685).  Dr. Smith acknowledged that L.A. had a history of short attention span and had a diagnosis of oppositional defiant disorder and conduct disorder.  (Tr. 682).  Dr. Smith indicated that L.A. was doing very well with hyperactive and aggressive behaviour.  (Tr. 685).  Dr. Smith found L.A. had medical improvement from his low birth weight.  (Tr. 685).

On December 29, 2016, L.A. was seen at St. Christopher's Pediatric Associates for a consultation regarding his mitral regurgitation.  (Tr. 686-690).  L.A.'s cardiac assessment was normal and it was indicated that L.A. may have a form of exercise-induced bronchospasm. (Tr. 687).

L.A. treated at Nueva Vida Behavioral Center from January 2015 through December 2017.  (Tr. 709-737).  In February 2015 a comprehensive biopsychosocial evaluation was completed and the plaintiff complained that L.A. was super hyper and really aggressive. (Tr. 716).  It was noted that L.A. has severe hyperactivity and fidgetiness, mild inattentiveness, moderated disruptiveness, and severe noncompliance.  (Tr. 716).  It was also recorded that plaintiff fights with his cousin at home and bangs his head and punches himself.  (Tr. 716). There

was no risk of self harm or harm to others.  (Tr. 717).  On mental status examination, L.A. was

unable to stay still and constantly interrupting and talking.  (Tr. 719).  It was found that L.A. was

severely hyperactive and inattentive.  However, it was also noted that L.A.'s attention was

adequate, concentration was adequate, explosiveness was mild.  (Tr. 719-720).  L.A.'s

compliance, judgement and insight were poor.  (Tr. 720).  L.A. was diagnosed with ADHD.  (Tr.

721).  A progress note from October 2015, indicated that L.A. was cooperative.  There were no

suicidal ideas.  (Tr. 729).   A follow-up progress note from September 29, 2017, indicates that

L.A. attitude was cooperative, speech was normal, mood was good, affect was appropriate, there

was no suicidal ideation, hyperactivity/impulsivity was high, concentration/attention was normal,

no learning problems were reported, and disruptiveness/aggression was moderate.  (Tr. 725).

Plaintiff indicated that L.A.'s level of disruptiveness had increased.  (Tr. 725).  A note from

Nueva Vida Behavioral Care from November 7, 2017, indicates that L.A. was prescribed

Benadryl and Adderall with a diagnosis of ADHD.  (Tr. 691).  A December 2017 progress note

indicates that L.A. has behavioral problems at school, impulsivity, temper outbursts and lack of

concentration.  (Tr. 730).  L.A. was unable to sit still through the session but was cooperative.  It

was discussed that L.A. set a fire in the house.  (Tr. 730).

      A treatment record from APM Human Services dated September 14, 2018,

indicated the plaintiff reported that L.A. is easily distracted, forgetful, has poor organization

skills, and often loses things.  (Tr. 741).  Plaintiff reported that L.A. is unable to sit still, looks

like he is running on a motor, often disrupts and cannot wait his turn.  (Tr. 741).  Plaintiff also

reported that L.A. has temper tantrums when he cannot get his way or when he gets into trouble.

(Tr. 741).  L.A. denied any suicidal ideations or history of suicidal gestures.  (Tr. 741).  There

are four progress notes from May 2018 through October 2018.  It was recorded that L.A. was

communicative and cooperative and had no suicidal thoughts.  (Tr. 744-747).  Plaintiff reported

L.A. continued to improve at home and school, but had episodes of poor attention, did not follow

instructions and fought with siblings.  (Tr. 744-747).

Educational

The records of L.A.'s grades show that he received mainly passing grades.  With

mainly As, Bs and Cs, with some Ds  for the 2018-2019 school year.  (Tr. 491-493, 553-560).  In

the 2017-2018 and 2018 school years L.A. also had 95% attendance and zero in-school or

out-of-school suspensions.  (Tr. 495).

L.A.'s teacher kept a behavior chart for eight school days and recorded L.A. was

playing around, unfocused, restless, talkative, and crawled on the floor.  (Tr. 505).

In October 2018, L.A. was evaluated under the Multi-Tiered System of Supports

(MTSS) for a recommendation of educational placement.  (Tr. 499-502).  Supplementary aids

and services were considered as an option, and were rejected at that time.  It was recommended

that L.A. be monitored in the general education classroom for 8 weeks and then the options

would be reconsidered.  (Tr. 500).

L.A.'s first grade teacher, Ms. Rebecca Brennenar completed a child functioning

assessment and noted that she had known L.A. for five months.  She found L.A. had marked

difficulty in following instructions but can follow them when inclined to.  (Tr. 535).  In the area

of interacting and relating L.A. 's teacher found marked to extreme limitations in nearly every

category, explaining that L.A. rolls on the floor during instruction, calls out at inappropriate

times with unrelated comments, attacks other students, throws others into each other, and runs

around the classroom.  (Tr. 536).  In the area of attending and completing tasks, L.A.'s teacher found marked and extreme limitations in nearly every category, explaining that L.A. will look for other students to play with or fight with during instruction and independent work time, does not complete tasks when engaging other students, will run around and roll around when is supposed to be working. (Tr. 537).  In the area of caring for self, L.A's teacher noted that L.A. is easily angered, is aggressive with other students, and will clench fists and rage when angry or frustrated.  (Tr. 538).

L.A. 's kindergarten teacher also completed a child functioning assessment and found only one area of marked limitation in interacting and relating, two areas of marked limitations in attending and completing tasks, and no areas of marked limitations in caring for self or acquiring and using information.  (Tr. 542-548).

There are two records of incidents of physical altercations, first hitting another child with a backpack, and then grabbing a student by the collar and letting go, throwing him onto a desk.  The two incidents are from the same day and location.  (Tr, 562-563).

V.    PLAINTIFF'S CONTENTIONS

Plaintiff argues: (i) the ALJ failed to fully develop the record and consider L.A.'s most recent medical evaluation; (2) remand is warranted for new evidence; (3) the ALJ improperly weighted outdated medical evidence; (4) the ALJ improperly weighed evidence from L.A.'s teachers; (5) the ALJ improperly weighted plaintiff's testimony; (6) the ALJ improperly relied on her own lay opinion; (7) the ALJ erred in finding L.A. does not have marked limitations in the domain of caring for yourself; and (8) the ALJ erred in finding L.A. does not have marked limitations in the domain of interacting and relating to others.

VI.     DISCUSSION

A.     <u>Whether the ALJ failed to fully develop the record</u>

Plaintiff argues that the ALJ is obligated to develop a complete record and failed to do so in the instant case.  <u>See</u> Pl. Brief at 7-8.  Plaintiff alleges that the ALJ denied plaintiff's request to keep the record open, providing plaintiff time to obtain a comprehensive mental health evaluation scheduled by COMHAR ("COMHAR evaluation").  <u>See</u> <u>id.</u>

Social Security proceedings are inquisitorial, not adversarial and, "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." <u>Sims v. Apfel</u>, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).  Moreover, while it has long been established in this circuit that the ALJ has a heightened duty to develop the record and to hold full and fair hearings when a claimant is unrepresented, <u>Livingston v. Califano</u>, 614 F.2d 342 (3d Cir.1980); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403 (3d Cir.1979), the ALJ's obligation to develop the record applies equally where a claimant is represented.  <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 557 (3d Cir.2005).  The burden still "lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition."  <u>Money v. Barnhart</u>, 91 Fed.Appx. 210, 215 (3d Cir.2004) (<u>citing</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and 20 C.F.R. §§ 404.1512(a) and 416.912(a)).  The ALJ "shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters." 20 C.F.R. § 410.640 (emphasis added).

Here, the plaintiff informed the ALJ in a timely manner that there was additional evidence, the COMHAR evaluation, that she wished to submit.  In a letter dated April 1, 2019, plaintiff informed the ALJ that she was attempting to obtain the COMHAR evaluation and requested that the record remain open until May 1, 2019 after the April 9, 2019 hearing.  (Tr. 525).  At the hearing plaintiff told the ALJ that the COMHAR evaluation would take place on April 24, 2019.  (Tr. 111).  Plaintiff now alleges that the ALJ refused to keep the record open, however, that accusation is inaccurate.  The ALJ agreed to keep the record open for two weeks after the hearing.  (Tr. 111, 113).  Plaintiff's representative replied, "Thank you, Your Honor." (Tr. 113).  On April 23, 2019, plaintiff submitted additional evidence and informed the ALJ that L.A. was scheduled the following day for the COMHAR evaluation.  (Tr. 749).  Plaintiff then failed to follow up in any way with the ALJ after the evaluation took place.  There is nothing in the record to show that the plaintiff attempted to submit the evidence at any time between the April 24, 2019 evaluation and the ALJ's June 5, 2019 decision.

Plaintiff has not proven that the ALJ failed to develop the record, when the plaintiff did not attempt to submit the COMHAR evaluation during the six weeks between the evaluation and the ALJ's decision.

B.      Whether remand is warranted to consider plaintiff's new evidence

Plaintiff next argues that even if the court finds that the ALJ did not err by closing the record and not obtaining the COMHAR evaluation, the instant matter must be remanded because the COMHAR evaluation presents new and material evidence of L.A.'s medical condition.  See Pl. Brief at 8-12.

The Third Circuit has discussed the standard that governs the Appeals Council's review of purportedly new and material evidence that was not present in the record considered by the ALJ:

> The regulations permit the claimant to submit to the Appeals Council "new and material" evidence that relates to the period on or before the date of the ALJ's hearing decision. The Appeals Council then must "evaluate the entire record including the new and material evidence submitted." However, the submission of the new and material evidence does not require the Appeals Council to grant review. On the contrary, the regulations provide that the Appeals Council will grant review only if it finds that the ALJ's decision "is contrary to the weight of the evidence currently of record."

Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir.2001) (quoting 20 C.F.R. § 404.970(b)) (citations omitted).

The Appeals Council in the instant matter denied the plaintiff's request for review of the ALJ's decision.  (Tr. 1-6).

Generally, Social Security appeals are considered and decided by this court pursuant to sentence four of § 405(g), which provides that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g) (sentence four); see also Matthews, 239 F.3d at 592. The Act further provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g) (sentence five); see also Matthews, 239 F.3d at 592.  "For the purposes of judicial review, the 'record' is 'the evidence upon which the findings and decision complained of are based.' That is the information that was before the ALJ, the final administrative decision maker when the Appeals

Council denies review." Matthews, 239 F.3d at 594 (quoting 42 U.S.C. § 405(g) (sentence three)).

However, if a plaintiff offers evidence in this court that was not presented to the ALJ, the court must address the issue of whether a new evidence remand is warranted under the sixth sentence of § 405(g). The sixth sentence of the Social Security Act states in relevant part: "[The Court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding…" 42 U.S.C. § 405(g) (emphases added); See Szubak v. Sec'y of HHS, 745 F.2d 831, 833 (3d Cir. 1984). Thus, the Court may grant a sentence six remand only if the plaintiff satisfies the burden of showing each of these elements exists. See Matthews, 239 F.3d at 593; Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985).

The United States Court of Appeals for the Third Circuit has enumerated four factors to guide this analysis:

> First, the evidence must be new and not merely cumulative of what is already in the record. . . . Second, the evidence must be material, relevant and probative. . . . Third, there must exist a reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion. . . . Fourth, the claimant must show good cause as to why the evidence was not incorporated into the earlier administrative record.

Scatorchia v. Comm'r of Soc. Sec., 137 Fed. App'x 468, 472 (3d Cir. 2005) (internal citations omitted).

Plaintiff here has failed to show that the COMHAR evaluation is new evidence. Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990) (emphasis added).

The court acknowledges that the evaluation did not exist at the time of the hearing, however, the evaluation is dated April 24, 2019.  The ALJ's decision was not rendered until June 5, 2019, nearly six weeks after the COMHAR evaluation was given.  As explained above, the plaintiff failed to request any extension of time to submit the evidence to the ALJ.  Plaintiff submitted additional evidence to the ALJ after the hearing, but failed to provide the ALJ with the COMHAR evaluation.  See Tr. 738-749.  In a letter dated April 23, 2019, plaintiff's representatives informed the ALJ regarding the additional information that they were submitting and informed the ALJ that the COMHAR evaluation would take place the next day.  (Tr. 749).  However, there is nothing in the record to show that the plaintiff then made any attempt to provide the ALJ with the evaluation once it was completed.

Plaintiff has also failed to show good cause for not providing the evidence to the ALJ prior to the ALJ's decision being rendered.  Plaintiff alleges that she requested that the record be kept open and that the ALJ denied the plaintiff's requests.  However, the notes of testimony from the hearing show that the plaintiff's allegation is inaccurate.  The ALJ said on the record, "All right.  I'm going to give you-- I'm going to give you two weeks to get all outstanding evidence to me."  (Tr. 111).  Plaintiff failed to request any extension of that two weeks.  Plaintiff provides no proof that she attempted to submit the COMHAR evaluation to the ALJ at any time prior to the ALJ's opinion being finalized.  There were six weeks between when the evaluation was completed and when the ALJ filed her decision.  Plaintiff has failed to prove that the evidence was new or that she had good cause for not producing it prior to the ALJ's decision in the instant, thus, plaintiff is not entitled to a sentence six remand.  See Matthews, 239 F.3d at 593.

C.      Whether the ALJ Improperly Considered Evidence of Record

1.      *Whether the ALJ Improperly Weighed Outdated Medical Evidence*

Plaintiff argues that the ALJ erred in affording great weight to the childhood disability evaluation on October 23, 2013 by Dr. Tedecso and the childhood disability evaluation conducted on February 26, 2014 by Dr. Smith.  See Pl. Brief at 12-16.  Plaintiff argues that the ALJ erred in affording great weight to these opinions because they were nearly six years before the hearing.  Plaintiff further argues that the ALJ erred in then giving limited weight to the evaluation completed by Dr. Torcato, from the same time frame, finding it outdated.  See id.

In considering a child's claim for disability, the ALJ considers all relevant evidence including medical evidence, test scores, school records, and information from people who know the child and can provide evidence about functioning, such as the child's parents, caregivers, and teachers. See 20 C.F.R. § 416.924(a).  In Chandler v. Commissioner of Social Security, 667 F.3d 356 (3d Cir.2011), the Third Circuit determined the ALJ in that case properly relied on the state agency medical consultant's RFC assessment in support of his decision to deny the claimant's application for benefits, noting that the ALJ did not merely rubber stamp the medical consultant's RFC determination, but rather considered the evidence as a whole.  Id. at 361–62.  The Third Circuit rejected the argument that an opinion was too outdated in Chandler, stating that "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." 667 F.3d at 361.  It is for the ALJ to determine whether subsequent medical evidence impacts the earlier findings.  Id., citing SSR 96–6p.

The ALJ appropriately considered all of the evidence of record, including the opinions of Dr. Tedesco, Dr. Smith, and Dr. Torcato.  Those records were from the relevant time period, which began when the comparison point decision was made on October 25, 2013, finding L.A. had medical improvement.  The ALJ provided substantial support from the record in determining what weight should be given to the instant three opinions.

Dr. Tedesco completed a Childhood Disability Evaluation Form on October 24, 2013 and indicated that L.A.'s impairment was developmental delay.  (Tr. 669).  Dr. Tedesco found L.A. had less than marked limitations in acquiring and using information.  It was also found that L.A. had less than marked limitations in attending and completing tasks, although he had a short attention span and was extremely uncooperative.  Noting that L.A. hits himself and others when angry, Dr. Tedesco found L.A. had less than marked limitation in interacting and relating with others.  It was also found that L.A. had less than marked limitations in health and physical well-being and moving about and manipulating objects.  Plaintiff had no limitation in caring for self.  (Tr. 669-674).

On February 26, 2014, Dr. Smith completed a Childhood Disability Evaluation form and found L.A. had less than marked limitations in all categories but moving about and manipulation objects, which had no limitations.  (Tr. 680-685).  Dr. Smith acknowledged that L.A. had a history of short attention span and had a diagnosis of oppositional defiant disorder and conduct disorder.  (Tr. 682).  Dr. Smith indicated that L.A. was doing very well with hyperactive and aggressive behaviour.  (Tr. 685).  Dr. Smith found L.A. had medical improvement from his low birth weight.  (Tr. 685).

The ALJ considered both Dr. Tedesco and Dr. Smith's opinions and gave them great weight, finding that their findings that L.A.'s impairment does not medically or functionally equal any listing was consistent with the treatment and educational records. The ALJ did not rely alone on those two opinions, she considered them as a part of the record in its entirety. The ALJ specifically found the opinions were consistent with treatment and educational records. (Tr. 29).

The ALJ noted that the records support that L.A. is impulsive, has difficulty sitting still, following classroom rules, and on one occasion tried to start a fire in his house. (Tr. 28). However, the ALJ explained that L.A. gets acceptable grades and his educational records do not reflect the frequency of disciplinary infractions alleged. There are only two incidents in the record involving L.A. being physical at school and both took place within the same half-an-hour of each other. (Tr. 28, citing 26E). The ALJ noted that while L.A.'s first grade teacher stated that he has a problem with authority figures, L.A.'s kindergarten teacher, who had known him for longer, stated that he never had issues with authority figures. (Tr. 26, citing Ex. 26E). The ALJ noted that L.A. does not have an IEP. L.A. was evaluated under the Multi-Tiered System of Supports and it was recommended that no action be taken at the moment, but that L.A. be followed in general education classes for eight weeks. (Tr. 28, citing Ex. 20E)

The ALJ also noted that the record from Nueva Vida Behavioral Health Center and APM Human Services show that L.A.'s treatment has been intermittent and that medication and treatment improves L.A.'s behavior. (Tr. 28, citing Ex. 17F, 19F). Treatment notes do indicate that L.A. is easily distracted, hyper, aggressive and constantly interrupts. (Tr. 709-741). There are four progress notes from May 2018 through October 2018. It was recorded that L.A.

was communicative and cooperative and had no suicidal thoughts. (Tr. 744-747). Plaintiff

reported L.A. continued to improve at home and school, but had episodes of poor attention, did

not follow instructions and fought with siblings. (Tr. 744-747).

Plaintiff alleges that the ALJ erred in not crediting the opinion of Dr. Torcato,

who completed a medical source statement on October 14, 2013 and indicated that L.A. had a

short attention span and likes to hit and throw things. (Tr. 657-663). L.A. was recommended to

receive early intervention services. (Tr. 660). Plaintiff argues that the ALJ dismissed the

opinion because it was almost six years old, thus, the ALJ should not be permitted to credit the

opinions of Dr. Tedesco and Dr. Smith from the same time frame. The ALJ gave Dr. Torcato's

opinion some weight, she did not completely discredit the opinion. Further, the ALJ agreed that

Dr. Torcato's finding that L.A. has a short attention span was supported by treatment and

education records, however, the ALJ found that the rest of Dr. Torcato's opinion was based on

subjective reports from the plaintiff and were inconsistent with the evidence over the following

years. (Tr. 29). The ALJ did not simply dismiss Dr. Torcato's opinion because it was

"outdated" as plaintiff alleges. Instead, the ALJ considered all of the evidence of record and

found Dr. Torcato's opinion was based largely on the plaintiff's subjective complaints and not

supported by the record.

The ALJ provided substantial support for her treatment of Dr. Tedesco, Dr. Smith,

and Dr. Torcato's opinions.

2.      *Whether the ALJ Improperly Weighed Evidence from L.A.'s Teachers*

Plaintiff argues that the ALJ erroneously discredited the evidence in the record from L.A.'s teacher and discarded this evidence without sufficient explanation.  See Pl. Brief at 16-18.

The ALJ reviewed and discussed the records for L.A.'s kindergarten and first grade teachers.  (Tr. 28-29).

L.A.'s first grade teacher, Ms. Rebecca Brennenar completed a child functioning assessment and noted that she had known L.A. for five months.  She found L.A. had marked difficulty in following instructions but can follow them when inclined too.  (Tr. 535).  In the area of interacting and relating L.A. 's teacher found marked to extreme limitations in nearly every category, explaining that L.A. rolls on the floor during instruction, calls out at inappropriate times with unrelated comments, attacks other students, throws others into each other, and runs around the classroom.  (Tr. 536).  In the area of attending and completing tasks, L.A.'s teacher found marked and extreme limitations in nearly every category, explaining that L.A. will look for other students to play with or fight with during instruction and independent work time, does not complete tasks when engaging other students, will run around and roll around when is supposed to be working. (Tr. 537).  In the area of caring for self, L.A's teacher noted that L.A. is easily angered, is aggressive with other students, and will clench fists and rage when angry or frustrated.  (Tr. 538).

L.A. 's kindergarten teacher also completed a child functioning assessment and found only one area of marked limitation in interacting and relating, two areas of marked limitations in attending and completing tasks, and no areas of marked limitations in caring for self or acquiring and using information.  (Tr. 542-548).

A teacher is not an acceptable medical source and, thus, her opinion is not entitled to any significant weight, 20 C.F.R. § 416.913(a), however, a teacher's opinion is still evidence from other sources to show how a child typically functions compared to children his age who do not have impairments.  20 C.F.R. § 416.913(d).  See also SSR 09-02p (stating that evidence from non-medical sources, such as teachers who know and have contact with the child, can be very important to understanding the severity of the child's impairment and how it affects day-to-day functioning and that we will consider such evidence).

"The ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  See also 20 C.F.R. § 416.924a(a) ("We consider all relevant information (i.e., evidence) in your case record" in determining disability for children.).  "The ALJ's duty to adequately explain the weight given to the opinions of treating physicians also extends to opinions from 'other sources,' especially where those sources may have greater knowledge than a physician about the plaintiff's functioning over time.  See Ruth v. Astrue, No. 09–2074, 2011 WL 2135672, at 13 (E.D.Pa. May 31, 2011) (finding the ALJ erred in crediting the opinion of a treating physician without adequately discussing a questionnaire provided by a teacher who had known the plaintiff for four years).

In this case, the ALJ's discussion of L.A.'s teacher's questionnaire has typographical errors.  The ALJ first notes that teachers are not an acceptable medical source, and then writes "however, the undersigned acknowledges that."  (Tr. 29). The ALJ clearly intended to expand on that thought and for some reason it was left out of the opinion.  The ALJ then wrote that less weight is given to the statements of L.A.'s first grade teacher who had only known L.A.

22

for five months at the time she offered her opinions.  (Tr. 29).  The court agrees it was  error to

not more thoroughly explain the ALJ's treatment and consideration of those opinions.  However,

a review of the ALJ's opinion in its totality shows that the ALJ reviewed and considered the

teacher questionnaires.  The ALJ cites the exhibits that contain the questionnaires at various

points throughout the opinion.  L.A.'s first grade teacher found marked and extreme limitations

in nearly every category.  The ALJ mentioned that the first grade teacher only knew L.A.for five

months.  Additionally, throughout the ALJ's opinion, the ALJ explained that while it was noted

repeatedly L.A. was hyperactive, had temper tantrums, and acted out, the record as a whole does

not support such restrictive findings.  The ALJ noted L.A. does not have an IEP, gets acceptable

grades, and only has two notations in his record of being physical at school.

Upon judicial review, this court's role is to determine whether an ALJ's decision

is supported by substantial evidence.  42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552

(1988).  "Substantial evidence is more than a mere scintilla but may be somewhat less than a

preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Reviewing the totality of the ALJ's opinion we find there is more than a mere scintilla of

evidence to support the ALJ's decision regarding L.A.'s teacher's questionnaires.  Plaintiff fails

to point to any evidence that supports the extremely restrictive findings of L.A.'s first grade

teacher.  Any typographical error or error on the ALJ's behalf in failing to complete her thought

is harmless.  "An error is 'harmless' when, despite the technical correctness of an appellant's

legal contention, there is also 'no set of facts' upon which the appellant could recover."  Brown

v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) (quoting Renchenski v. Williams, 622 F.3d 315, 341

(3d Cir. 2010) ).  In other words, "a remand is not required ... [if] it would not affect the outcome

of the case." Rutherford, 399 F.3d at 553. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (1969); Woodson v. Comm'r of Social Security, 661 F. App'x 762, 766 (3d Cir. 2016) (citing Shinseki, 556 U.S. at 409) (a plaintiff must point to specific evidence that demonstrates his claimed error caused harm). The ALJ's opinion in its entirety offers support that the ALJ found that the medical and educational records did not support the restrictive findings of L.A.'s first grade teacher. Plaintiff has not shown that further discussion of the questionnaires by the ALJ would have affected the outcome of the case. The court cannot conclude that the plaintiff has satisfied her burden of showing harmful error and cannot conclude that meaningful review was precluded. Accordingly, the claimed error is not sufficient cause for remand.

3.      *Whether the ALJ Improperly Weighed Plaintiff's Testimony*

Plaintiff alleges that the ALJ erroneously disregarded plaintiff, L.A.'s mother's, testimony, labeling it as "subjective" without citing contradictory evidence. See Pl.Brief at 18. Plaintiff alleges that she testified that L.A. "said he wanted to kill himself," "hit[s] himself," and "punch[es] the wall" (Tr. 27) and the ALJ dismissed this evidence of self-injurious behavior, however, categorizing them as "subjective." See id.

The ALJ considered plaintiff's testimony and then considered the medical and educational records at issue. The ALJ found, based on the evidence of record, that plaintiff's testimony as to L.A.'s symptoms was not credible. (Tr. 28).

The ALJ noted that plaintiff testified that a teacher told her that L.A. had a delay in reading and gets pulled out of class for support, however, the ALJ noted that there is nothing

in the record to indicate that L.A. had any formal evaluation of his reading ability, he reads well enough to receive adequate grades, psychiatric treatment notes indicate no reported learning problems, and the only indication that L.A. is pulled out of class is a note that says "pulled out by Experience Corps", which is an organization that provides tutoring by senior citizens.  (Tr. 26, citing Ex 20F).  The ALJ noted that the plaintiff reported self-injurious behavior and that L.A. said he wanted to kill himself after getting in trouble for hitting his brother.  (Tr. 26, 27).  However, that assertion is not supported by the clinical record, explained the ALJ.  (Tr. 26).

"Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence."  Pysher v. Apfel, No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing Van Horn v. Schweiker, 717 F.2d 871, 973 (3d Cir. 1983)).  Moreover, such determinations are entitled to deference.  See Hoyman v. Colvin, 606 Fed.Appx. 678, 681 (3d Cir. 2015); Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014).  An ALJ "may reject a claimant's subjective testimony if [he] does not find it credible so long as [he] explains why [he] is rejecting the testimony." See Hall v. Comm'r of Soc. Sec., 218 Fed.Appx. 212, 215 (3d Cir. 2007).

Plaintiff alleges that the ALJ dismissed plaintiff's testimony of self-injurious behavior without providing contrary evidence.  However, the ALJ noted that there was no evidence in the record to support that testimony.  Plaintiff fails to offer any evidence from the clinical records to support that testimony.  See Woodson v. Comm'r of Soc. Sec., 661 Fed. App'x 762, 765–66 (3d Cir. 2016).  The ALJ considered the evidence from Nueva Vida Behavioral Health Center and APM Human Services, and the court notes that the records repeatedly state that L.A. exhibited no suicidal ideation or history of suicidal gestures.  (Tr. 725, 729, 741,

744-747); Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (Once an ALJ "articulates at some minimum level her analysis of a particular line of evidence," then she is not required to provide "[a] written evaluation of every piece of evidence.")  Substantial evidence in the record supports the ALJ's determination that the plaintiff's testimony was not entirely credible.

4.     *Whether the ALJ Improperly Relied on Her Own Lay Opinion*

Plaintiff's next argues that the ALJ erred by impermissibly substituting her own lay opinion in place of medical evidence.  See Pl. Brief at 18-21.  Alleging that the ALJ relied on her own lay opinions instead of evidence of record, plaintiff requests that the ALJ's decision be reversed.  See id.

As set out above, it is the ALJ's duty not only to state the evidence considered which supports the result but also to indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter, 642 F.2d at 706-07.  A thorough explanation of the evidence relied upon by the ALJ in discounting a medical source opinion takes on added significance in a case involving severe mental impairment in that the Third Circuit has advised that "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving mental disability." Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000).

Plaintiff argues that the opinion is replete with examples of the ALJ analyzing medical evidence based on her personal opinions.  Plaintiff points to the ALJ's statement that she

was not convinced that L.A.'s tantrums were not age appropriate and the ALJ's statement

regarding L.A.'s learning disability, where the ALJ noted that L.A. is able to read well enough,

play video games, and use a smartphone to watch movies.   Plaintiff also alleges that the ALJ

discounts L.A.'s ADHD, stating that he can concentrate on tasks he enjoys, such as watching

shows on the phones, playing video games, and was able to behave appropriately at the hearing.

Plaintiff alleges that all of these statements made by the ALJ show that she substituted her lay

opinion for the medical evidence of records.

   We find that the ALJ did not supplement her lay opinion for a medical opinion of

record.  As explained above, the ALJ reviewed the record in its entirety.  Plaintiff's argument

regarding the ALJ's treatment of L.A.'s temper tantrums, is in relation to the portion of the

ALJ's opinion when she reviewed L.A.'s October 2013 comparison point decision and L.A.'s

low birth weight impairment.  (Tr. 25).  The ALJ noted that the 2013 consultative evaluation

reported that L.A. indulged in temper tantrums around feeding and dressing.  The ALJ noted that

she was not convinced those tantrums were not age appropriate.  In October 2013, L.A. was two

years old.  The ALJ did not base the denial of benefits for L.A.'s regarding his ADHD

impairment on that statement.  The ALJ was discussing plaintiff's tantrums regarding feeding

and dressing at the age of two.  The ALJ then proceeded to analyze L.A. 's ADHD and noted that

the record shows that L.A. certainly seems impulsive, has difficulty sitting still and following

classroom rules.  (Tr. 28).

   Additionally, the ALJ did not "dismiss L.A.'s learning disabilities based on her

own lay opinion," as alleged by the plaintiff.  There is no diagnosis of learning disability in the

record, and the plaintiff does not point to one. The ALJ considered the plaintiff's testimony that

L.A. received educational support and noted that there is only one notation in the record that indicates that L.A. is pulled out for reading support.  However, the ALJ further noted that there is no IEP, and L.A. was evaluated under the MTSS process and no recommendation was made except for that L.A. should be observed for another eight weeks in a general education setting. The ALJ also explained that L.A.'s psychiatric treatment notes do not report any learning problems.  The ALJ also considered the testimony that L.A. was able to play video games, received adequate grades, and watched movies on a smartphone.  The ALJ did not simply dismiss the plaintiff's testimony that L.A. has a learning disability and substitute her own lay opinion. Rather, the ALJ reviewed all of the records at hand and supported the finding that L.A. 's reading issues are a non-severe impairment.

Finally, the ALJ did not discount L.A.'s ADHD symptoms based on her lay observations that L.A. was able to behave appropriately at the hearing, as now alleged by the plaintiff.  The ALJ once again considered the entirety of the record in determining that L.A.'s ADHD symptoms did not render L.A. disabled under the Act.  The ALJ did note that L.A. is able to concentrate on tasks he enjoys, such as watching movies and playing video games, and that L.A. behaved appropriately in the hearing room.  (Tr. 28).  These were observations made by the ALJ, however, the ALJ also acknowledged that L.A. is impulsive, has difficulty sitting still and following classroom rules.  The ALJ also acknowledged that L.A. had two physical altercations at school.  The ALJ then explained that L.A. received acceptable grades, the educational records do not reflect the alleged frequency of disciplinary infractions alleged, there is no indication that L.A. absconds from the classroom or school or engages in other extreme behavior on a consistent basis, and L.A. has not been suspended from school.  Finally, the ALJ considered that L.A. has

had intermittent treatment, has not been medicated consistently, and it appears that L.A.'s behavior improves when he is medicated and in treatment.  (Tr. 28).  The ALJ did not substitute her lay opinion that L.A. behaved appropriately at the hearing for  medical evidence received  of L.A.'s ADHD.  Again, the ALJ considered the entire record in considering L.A.'s ADHD symptoms.

Thus, the ALJ properly considered and weighed the medical evidence and testimony, and the ALJ appropriately articulated her reasons for the treatment of the medical evidence and the subjective testimony of record.  The ALJ did not substitute her lay opinion for evidence of record.

     D.    <u>Whether the ALJ Provided Support for the Finding of Less Than Marked Limitation in Caring for Yourself</u>

Plaintiff argues that the ALJ erred in finding L.A. does not have marked limitations in the domain of caring for yourself.  <u>See</u> Pl. Brief at 21-24.  Plaintiff alleges that the record demonstrates that L.A. suffers from marked limitations in this domain, citing to plaintiff's testimony that L.A. has self-injurious behavior.  <u>See id.</u>  Plaintiff argues that the ALJ erred in finding plaintiff's testimony regarding self-injurious behavior were subjective reports.  <u>See id.</u> For the reasons that follow, we find substantial evidence supports the ALJ's determination.

An impairment functionally equals the listings at step three if it results in "marked" limitations in two (2) domains of functioning or an "extreme" limitation in one (1) domain.  20 C.F.R. § 416.926a(a).  The six domains of functioning to be considered in this evaluation are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.  20 C.F .R. § 416.926a(b)(1)(i)-(vi).  A "marked" limitation in a domain

will be found "when your impairment(s) interferes seriously with your ability to independently

initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation

also means a limitation that is "more than moderate" but "less than extreme."  Id.  An "extreme"

limitation in a domain will be found "when your impairment(s) interferes very seriously with

your ability to independently initiate, sustain, or complete activities."  20 C.F.R. §

416.926a(e)(3)(i).  An "extreme" limitation is "more than marked" but does not necessarily mean

a total lack or loss of ability to function.  Id.

When evaluating this domain, the ALJ must consider how well a plaintiff maintains a

healthy emotional and physical state, how well he copes with stress and changes in his

environment, and whether he takes care of his own health, possessions and living area.  20

C.F.R. § 416.926a(k).  A child of plaintiff's age should be able to take care of many of his

physical needs by himself (e.g., put on shoes, get a snack) and may also want to try to do things

that he cannot do fully (e.g., tie shoes, bathe).  A child of plaintiff's age should also begin to

understand how to control behaviors that are not good for him (e.g., cross the street without an

adult).  20 C.F.R. § 416.926a(k)(2)(iii).  Possible limitations in this domain include using

self-soothing activities showing developmental regression (e.g., thumb sucking, re-chewing

food), having restrictive or stereotyped mannerisms (e.g., body rocking, head banging), engaging

in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury or refusal to take

medication), ignoring safety rules, not spontaneously pursuing enjoyable activities or interests,

and disturbances in his eating or sleeping patterns.  20 C.F.R. § 416.926a(k)(3).

The ALJ considered this domain and found that L.A. had less than marked limitation

in the ability to care for himself.  (Tr. 30). The ALJ found "L.A. is impulsive, calling out in class,

and having a difficulty following classroom rules.  He once threw a rock at a dog, and once tried

to start a fire at home.  However, there is no evidence of self-harm, difficulty following safety

rules, efforts to elope from school or home.  L.A. takes his medication as required, and can care

for his personal needs in age appropriate fashion, even if he does not like to get dressed for

school."  (Tr. 30).

      The court finds that the ALJ's determination that L.A. had less than marked limitation

in caring for himself to be supported by substantial evidence in the record.  The only evidence

plaintiff points to in support of this argument is plaintiff's statements regarding L.A.'s

self-injurious behavior.  As explained above, the ALJ provided substantial support for the

decision to find the plaintiff not entirely credible regarding L.A.'s self-injurious behavior.  The

ALJ noted that the plaintiff reported self-injurious behavior and that L.A. said he wanted to kill

himself after getting in trouble for hitting his brother.  (Tr. 26, 27).  However, that assertion is

not supported by the clinical record, explained the ALJ.  (Tr. 26).  Plaintiff fails to offer any

evidence from the clinical records to support that testimony.  See Woodson v. Comm'r of Soc.

Sec., 661 Fed. App'x 762, 765–66 (3d Cir. 2016).  The ALJ considered the evidence from Nueva

Vida Behavioral Health Center and APM Human Services, and the court notes that the records

repeatedly state that L.A. exhibited no suicidal ideation or history of suicidal gestures.  (Tr. 725,

729, 741, 744-747); Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (Once an ALJ

"articulates at some minimum level her analysis of a particular line of evidence," then she is not

required to provide "[a] written evaluation of every piece of evidence.")  Substantial evidence in

the record supports the ALJ's determination that the plaintiff's testimony was not entirely

credible.  Plaintiff's only argument is that the ALJ erred in finding the statements regarding self-injurious behavior were "subjective complaints."

After review, we find the ALJ appropriately supported the finding that the record did not support the reports of self-injurious behaviour.  The ALJ did not err in finding that L.A. had less than marked limitation in the ability to care for himself.

E.    Whether the ALJ Provided Support for the Finding of Less Than Marked Limitation in Interacting and Relating with Others

Plaintiff's final argument is that the ALJ erred in finding L.A. does not have marked limitations in the domain of interacting and relating with others.  See. Pl. Brief at 24-26. Plaintiff argues that ALJ failed to give L.A. 's teachers' reports proper weight, which would have changed the ALJ's analysis in the interacting and relating with others category.  See id.

When analyzing the domain of interacting with and relating to others, an ALJ considers how well a claimant can "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  The regulations note that a claimant of plaintiff's age should be able to socialize with children as well as adults; begin to prefer playmates her own age and develop friendships with children her age; use words instead of actions to express herself; be better able to share, show affection, and offer to help; relate to caregivers with increasing independence; choose friends and play cooperatively with other children; initiate and participate in conversations; use increasingly complex vocabulary and grammar; and speak clearly so listeners can understand. See id. § 416.926a(i)(2)(iii).

The ALJ found less than marked limitations in this domain.  The ALJ noted that L.A. fights with his siblings, and has been in fights in school.  However, treating and examining providers consider L.A. friendly and cooperative, even while he has difficulty sitting still.  (Tr. 30).  The ALJ also noted that while L.A. can be extremely talkative, he behaved appropriately at the hearing.  (Tr. 30).

Plaintiff cites L.A.'s teachers' reports to support the argument that the ALJ's decision in this category is faulty.  However, as discussed above, the ALJ provided substantial support for deciding to give no weight to the significant limitations reported by L.A.'s first grade teacher. The ALJ considered all of the evidence of record and found L.A. had less than marked limitations in this category.  The ALJ acknowledged that L.A. fights with his siblings and sometimes at school.  However, the record also has notations that L.A. is friendly and cooperative.  (Tr. 709, 725, 729-30, 742-44, 747).   The ALJ mentioned that the first grade teacher only knew L.A.for five months.  Additionally, throughout the ALJ's opinion, she explained that while it was noted repeatedly that L.A. was hyperactive, had temper tantrums, and acted out, the record as a whole does not support such restrictive findings.  The ALJ noted that L.A. does not have an IEP, gets acceptable grades, and only has two notations in his record of being physical at school. The ALJ also noted that no treating medical provider opined that L.A. had a marked or extreme limitation in this domain.  (Tr. 18)  It is the ALJ's responsibility to resolve conflicts in the evidence.  Richardson, 402 U.S. at 399.

The ALJ provided substantial support for this finding, hence, the plaintiff's request for review is denied as to this claim.

VII.      CONCLUSION


The court finds  the decision of the ALJ that plaintiff is not disabled under the ACT is supported by substantial evidence.

Accordingly, the court will deny the plaintiff's request for review, and affirm the decision of the Commissioner of Social Security.

An Order follows.